IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | | |
|---|---|---|
| INTERFACE, INC.; INTERFACE AMERICAS, INC.; INTERFACEFLOR LLC; and FLOR, INC. | ) ) ) ) | |
| Plaintiffs, | ) ) | CIVIL ACTION FILE NO: |
| v. | ) ) | 4:13-cv-00046-WSD |
| TANDUS FLOORING, INC. and TANDUS FLOORING US, LLC | ) ) ) ) | |
| Defendants. | ) ) | |
| _____ | ) | |

## DEFENDANTS TANDUS FLOORING, INC. AND TANDUS FLOORING US, LLC'S MEMORANDUM IN SUPPORT OF MOTION TO EXCLUDE OPINIONS AND TESTIMONY OF CLARKE B. NELSON

Defendants Tandus Flooring, Inc. and Tandus Flooring US, LLC ("Tandus"), by and through their undersigned counsel, hereby submit this memorandum in support of their motion to exclude opinions and testimony of Clarke B. Nelson pursuant to Federal Rule of Evidence 702, *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), and Northern District of Georgia Local Rule 26.2(c). Tandus respectfully requests that the Court give his opinions and testimony no weight in the consideration of Plaintiffs Interface, Inc., Interface

Americas, Inc., InterfaceFlor LLC and FLOR, Inc.'s ("Interface") Motion for Preliminary Injunction (Doc. No. 8, "Motion for Preliminary Injunction").

## I.   <u>INTRODUCTION</u>

Interface has moved this Court for a preliminary injunction, claiming, among other things, it will be irreparably harmed by Tandus' continued production and sales of TandusTape during the pendency of this litigation.  As set forth in Tandus' opposition to that motion (Doc. No. 26), Interface's motion fails for a number of reasons, not the least of which is that it cannot show any evidence of irreparable harm attributable to Tandus' actions.  There is no evidence of lost market share or price erosion that can be attributed to TandusTape, nor is there any evidence tying alleged harm to the alleged infringing activity.  Further, the majority of Interface's claims of harm are based on acts of J&J Industries, Inc. ("J&J"), not Tandus, and are irrelevant to Interface's Motion for Preliminary Injunction.

In an effort to overcome these obvious deficiencies, Interface offers Clarke B. Nelson ("Nelson") as a proposed expert on issues pertaining to irreparable harm (and other factors).  However, Nelson's declaration and testimony only highlight the deficiencies in Interface's position.  Nelson actually refused to offer any opinions, adopted statements of Interface employees as fact without any legitimate

attempts to verify their accuracy, reached conclusions without any supporting methodology, adopted the opinions of others without knowledge of their methodology, and admitted that he is not qualified to render opinions related to the carpet tile market.  As a result of these clear deficiencies, Nelson's testimony fails to meet the standards required by Federal Rule of Evidence 702 as set forth in *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993) and should be given no weight in the Court's consideration of Interface's Motion for Preliminary Injunction.

## II.   <u>LEGAL STANDARD</u>

To be admissible under Rule 702, the Court must determine that Nelson's proposed expert testimony is both reliable and relevant and that it will assist the trier of fact.  FED. R. EVID. 702; *Daubert*, 509 U.S. at 591.  Interface bears the burden to show admissibility.  *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1256 (11th Cir. 2002) (citations omitted).  In doing so, the Court must first act as a gatekeeper, to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field. *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 141, 152 (1999).

The Court must then determine whether Nelson's opinions are reliable by assessing the underlying reasoning and methodology.  *Daubert*, 509 U.S. at 592-93.  Reliability questions may concern his data, method, or his application of the method to the data.  *Jack v. Glaxo Wellcome, Inc.*, 239 F. Supp. 2d 1308, 1315 (N.D. Ga. 2002).  Any step that renders his analysis unreliable renders his testimony inadmissible.  *McClain v. Metabolife Intern., Inc.*, 401 F.3d 1233, 1245 (11th Cir. 2005) (citing *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 267 (2d Cir. 2002)).  *Daubert* identified a number of factors that might assist in determining reliability: (1) whether Nelson's theory or technique applied can be tested; (2) whether it has been subject to peer review or publication; (3) whether it has a known or potential rate of error; and (4) whether it is accepted in the relevant discipline.  *See Daubert*, 509 U.S. at 593-94; *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).  The Court should also consider whether Nelson's conclusions are an "unfounded extrapolation" from the data, whether Nelson has adequately accounted for alternative explanations for the effect at issue, whether Nelson's opinion was reached for the purposes of litigation or as the result of independent studies, and whether he unduly relies on anecdotal evidence.  *See Gen. Elec. Co.*, 522 U.S. at 146.  An untested hypothesis will not provide a scientific basis to support an expert opinion.  *See Norris v. Baxter Healthcare Corp.*, 397 F.3d 878,

4

887 (10th Cir. 2005); *Grant v. Pharmative, LLC*, 452 F. Supp. 2d 903, 907 (D. Neb. 2006); *Soldo v. Sandoz Pharm. Corp.*, 244 F. Supp. 2d 434, 541 (W.D. Pa. 2003); *In re Breast Implant Litig.*, 11 F. Supp. 2d 1217, 1227-28 (D. Colo. 1998). An expert's testimony may be also excluded if "there is simply too great an analytical gap between the data and the opinion proffered." *Gen. Elec. Co.*, 522 U.S. at 146.

## III.  ARGUMENT

Nelson's opinions (or lack thereof) set forth in his declaration fail to meet the reliability standards set forth in Rule 702 and *Daubert* for the following reasons:

### A.  Nelson's Assignment Infringes the Role of the Court.

Nelson's declaration states that he was merely asked to "identify potential considerations surrounding economic aspects of the proposed injunction; in particular, how such economic considerations may relate to the above identified factors."  Declaration of Clarke B. Nelson in Support of Interface, Inc.'s Motion for Preliminary Injunction, Doc. No. 8-3 ("Nelson Decl."), ¶ 7; *see also* Deposition of Clarke Nelson, May 31, 2013, Doc. No. 26-27 ("Nelson Tr."), 167:3-171:4. Indeed, Nelson went to great lengths to make clear that he was offering *no opinion* with respect to each of the four preliminary injunction factors, including

irreparable harm (Nelson Tr. 11:4-10; 13:21-15:5; 111:10-114:9), or with respect to the "economic considerations" enumerated in his declaration (Nelson Tr. 31:21-35:13; 70:6-72:23; 91:16-93:1; 104:15-108:16; 113:14-114:9).   In fact, Nelson refused to answer questions as to whether competitors offered alternatives to the technology described in U.S. Patent No. 8,381,473 ("the '473 patent"), with the blessing of his counsel.  *Id.* 33:17-22 (█████████████████████████

████████████████████████████████████████

████████████████████████████████████████

███████████████████).  But if Nelson cannot give an opinion on whether there are commercially practical alternatives to the patented technology, he cannot possibly assist the trier of fact with respect to its consideration of irreparable harm. *Id.* 104:15-105:7.  When asked directly how he could assist the trier of fact absent giving an opinion, he explained (albeit incorrectly) that his role is merely to █████

████████████████████████████████████████

████████████████████████████████████████

████████████████████ *Id*. 11:4-10; *see also id.* 13:21-15:5.  In fact, "[e]ach courtroom comes equipped with a 'legal expert,' called a judge," and applying the indicia of irreparable harm to the facts is solely within the judges' purview. *Burkhart v. Washington Metro. Area Transit Auth.*, 112 F.3d 1207, 1213

(D.C. Cir. 1997) (citing *Marx & Co. v. Diners' Club, Inc.*, 550 F.2d 505, 509-10 (2d Cir. 1977)) (quotations omitted); *see also iFreedom Direct Corp. v. First Tenn. Bank N.A.*, 2012 WL 3067597, at *2 (D. Utah July 27, 2012).

### B. Nelson's Analysis is a Mere Regurgitation of Allegations Included in Interface's Fact Declarations.

The bulk of Nelson's declaration simply recounts and summarizes testimony by Interface employees and publicly available sources concerning Interface's and Tandus' businesses. Nelson Decl. ¶¶ 42-108. His so-called "method" for drawing the inferences outlined in his declaration simply is to recite the opinions of Interface employees and adopt them as undisputed fact.

For example, based solely on the fact declarations of two (obviously biased) Interface executives (John Bradford ("Bradford") and Stuart Jones) and an installer who has only installed Interface carpet his entire career,[1] Nelson concludes that he is "currently not aware of any available non-infringing commercially acceptable alternatives that provide a glueless installation consistent with that of the TacTiles connectors." Nelson Decl. ¶ 94. Nelson does not bother to undertake any independent investigation in support of this conclusion (Nelson Tr. 96:5-19, 105:25-110:21), ignores the testimony from Bradford that undercuts the conclusion

---

[1] Deposition of Thomas W. Anderson, May 29, 2013, Doc. No. 26-24, 72:6-24; 81:16-83:16; 85:22-86:3; 88:21-90:7.

(Deposition of John P. Bradford, May 21, 2013, Doc. No. 26-25 ("Bradford Tr."), 12:6-13:12), and even ignores articles cited elsewhere in his declaration suggesting that Mannington, Milliken, Shaw, and Tandus all offer commercially acceptable alternatives (Nelson Tr. 31:9-35:3; 110:22-111:20; Nelson Decl. ¶ 86; Modular Carpet Report, FloorDaily.net, Feb. 2012, Doc. No. 26-30 ("Modular Carpet Report") at 3; Declaration of Andrew W. Carter, Doc. No. 26-1 ("Carter Decl."), ¶¶ 87-92). Nelson, likewise, came to the conclusion that Interface lost certain jobs as a result of Tandus' alleged infringement based solely on the word of a single Interface employee. Nelson Decl. ¶¶ 68-70; Nelson Tr. 126:9-20.

By way of further example, Nelson includes a section entitled "platform for further innovation and market expansion" in his declaration. Nelson Decl. ¶ 85. However, the entirety of this section is comprised of direct quotes from the declarations of Interface employees. *Id.* Nelson does not even attempt to pass these off as his own opinions as the conclusion itself is couched in terms of what "Interface believes." *Id.* ("Interface believes TacTiles® connectors are a platform for further innovation and market expansion.").

Nelson may not simply "repeat[] facts or opinions stated by other potential witnesses or in documents produced in discovery" and draw "simple inferences" from them. *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 546-547

8

(S.D.N.Y. 2004); *see also iFreedom Direct Corp.*, 2012 WL 3067597, at *3 ("[A] party may not elevate and advocate the value of individual evidence by having it recounted by an expert.  Expert testimony that is simply a summation of the evidence or an attempt to make a closing argument via an expert should be excluded." (quotations and citations omitted)).  "Such testimony comes 'dangerously close to usurping the [factfinder's] function' and 'implicates [Federal Rule of Evidence] 403 as a needless presentation of cumulative evidence and a waste of time.'"  *Crowley Bracco Diagnostics, Inc. v. Amersham Health, Inc.*, 627 F. Supp. 2d 384, 441 (D.N.J. 2009) (quoting *U.S. v. Dukagjini*, 326 F.3d 45, 54 (2d Cir. 2003)).

## C. Where Nelson Does Offer a Conclusion, He Offers No Method of Any Kind.

Pursuant to Rule 702, an expert may testify as to an opinion or otherwise if "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case."  FED. R. EVID. 702. Nelson's conclusions simply cannot meet the standards required by Rule 702 where he admits he didn't bother to investigate the so-called "facts" on which he relies and fails to offer any method for reaching his conclusions.

Scattered throughout Nelson's declaration are examples of "facts" that Nelson was provided by biased Interface employees and for which he made no attempt to independently verify.  In many cases, these facts turn out to be simply untrue.  For example, Nelson relies solely on the statement of Interface employee David Gerson for the proposition that Interface's competitors believe they need to find some way to counter Interface's ability to offer glueless installation in order to effectively compete against Interface.     Nelson Decl. ¶ 87.  Nelson apparently made no independent attempt to verify this "fact" (*see* Nelson Tr. 35:14-38:16), and never even spoke with Mr. Gerson to test whether it could possibly be true (Nelson Tr. 55:11-57:7).  Neutral industry publications, in addition to Interface's own corporate designee (Bradford), state that Interface's competition already offered glueless installations, some of which came out much earlier than Interface's TacTiles.  Bradford Tr. 12:6-13:12; Nelson Tr. 31:9-35:3, 110:22-111:20; Nelson Decl. ¶ 86; Modular Carpet Report at 3; Carter Decl. ¶¶ 87-92.[2] Simply accepting Gerson's statement at face value does not ground Nelson's testimony in sufficient facts or make it the product of a reliable method.   Instead, his testimony is merely an adoption of the opinion – or perhaps simply wishful

---

[2] Tandus had come out with its RS peel and stick product in the late 1980s and Milliken came out with its TractionBack product in 2003.  Declaration of Paul Evans, Doc. No. 26-4, ¶¶ 8-9; Carter Decl. ¶¶ 100-102.

thinking – of an Interface employee without any method for reaching his conclusions.

Similarly, Nelson concludes that the features claimed in the '473 patent are a "key sales differentiator" allowing Interface to "obtain new business."   Nelson Decl. ¶ 75.   In doing so, Nelson relies primarily on the beliefs of Interface employees Jim Sedlacek and David Gerson.  *Id.* ¶ 76.  Nelson made no attempt to test Messrs. Sedlacek and Gerson's statements or beliefs beyond cursory discussions with one of those gentlemen.   Nelson Tr. 41:14-48:3; 55:11-57:7. Nelson failed to consider the fact that TacTiles is barely mentioned on Interface's website and is not even a prominent feature touted in Interface's advertisements. *Id.* 48:4-49:25, 51:9-53:2.   He did not ask a single Interface customer whether TacTiles' features were important factors in their purchase decisions.  *Id.* 54:18-57:7.  He did not ask whether other Interface "innovations" were also key sales differentiators, despite documents suggesting this was clearly so.  *Id.* 51:16-62:11; 67:19-72:23; 75:4-81:8.  He did not even bother to challenge Messrs. Sedlacek and Gerson as to whether other product offerings  and characteristics may factor into customers  purchasing  decisions  (*e.g*.,  quality,  design,  durability,  price, relationships).  *Id.* 53:4-57:5.  Put simply, Nelson merely adopted the conclusions

of Interface employees and counsel without employing any method whatsoever in reaching his conclusions.

Perhaps the most telling illustration of Nelson's lack of any method whatsoever is his conclusion that "this matter presents challenges to quantifying the full measure of compensatory damages to a reasonable probability."  Nelson Decl. ¶ 102.  Nelson makes no attempt to explain his method for reaching this conclusion.  In fact, Nelson admits he did not even attempt to calculate Interface's alleged damages.  *Id*. ¶¶ 102-107.  In contrast, Tandus' expert, Mr. Carter, explains in his declaration that damages calculations in this case would be straightforward, due to the recency of the filing of the complaint, the records kept by both parties, and the factors properly considered in a lost profits analysis, which is a common, acceptable damages calculation.  Carter Decl. ¶¶ 112-124.  Mr. Nelson never mentioned or even considered any of the economic factors relevant to a proper calculation of damages.  Nelson Tr. 136:10-13 (███████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████  Further, Mr. Nelson conceded that he is not an expert at determining the value of a firm's goodwill or reputation, though this was part of the basis for

Mr. Nelson's conclusion in his declaration that Interface's harm was "difficult to quantify." *Id*. 138:20-139:20; Nelson Decl. ¶¶ 106-107.

The bottom line is Interface's alleged harm is quantifiable, but Mr. Nelson simply did not attempt to perform the necessary calculations, choosing instead to rely on the self-interested averments of Interface declarants that such calculations would be "difficult." Carter Decl. ¶ 113. Nelson's method – or total lack thereof – fails to meet the standard for reliability required by the Rule 702. FED. R. EVID. 702; s*ee also Daubert*, 509 U.S. at 593-94; *Gen. Elec. Co.*, 522 U.S. at 146. Moreover, this lack of effort or analysis cannot serve as a basis for finding Interface's alleged harm unquantifiable. *Cf. Abbott Labs. v. Andrx Pharm., Inc.*, 452 F.3d 1331, 1348 (Fed. Cir. 2006).

### D. Nelson Inappropriately Repeats the Opinions and Data of Others Without Any Knowledge of Their Methodology.

Nelson repeatedly (and impermissibly) relies on and repeats the opinions of other witnesses, including John Bradford, in reaching his conclusions without any understanding of the methods used to form their opinions. Nelson Tr. 20:3-22:7; 26:15-27:21; 31:20-33:5; 156:19-157:7. For example, Nelson made no independent analysis of the alleged nexus between the '473 patent and TacTiles' commercial success, instead relying entirely on Bradford's word in assuming the necessary nexus exists. Nelson Decl. ¶¶ 78-79; Nelson Tr. 146:9-152:21. An

13

expert is entitled to rely on the opinions of others, but only if the expert has familiarity with the methods used to support the opinions.  *See*, *e.g.*, *TK-7 Corp. v. Estate of Barbouti*, 993 F.2d. 722, 732 (10th Cir. 1993); *Deutz Corp. v. City Light & Power, Inc.*, 2009 WL 2986415, at *6 (N.D. Ga. Mar. 21, 2009) (holding an expert who is not qualified in the field is not permitted to simply adopt the conclusions of another); *Petersen v. DaimlerChrysler Corp.*, 2011 WL 2491026, at *4 (D. Utah June 22, 2011).  Here, Nelson made no attempt to familiarize himself with the methodologies Bradford may have employed, if any, to reach his dubious conclusion that such nexus exists; Nelson simply accepts his opinion as established fact.  Nelson Decl. ¶¶ 78-79; Nelson Tr. 146:9-152:21.

E.     **Nelson Inappropriately Relies on Acts of Other Parties in his Analysis of Irreparable Harm Considerations Related to Tandus' Alleged Infringement.**

The vast majority of Nelson's "economic considerations" rely on alleged harm caused by the acts of J&J, not Tandus.  Such acts are irrelevant to Interface's Motion for Preliminary Injunction against Tandus.  *See Hynix Semiconductor Inc. v. Rambus Inc.*, 609 F. Supp. 2d 951, 983 (N.D. Cal. 2009) (holding that while the infringement of others does present a scenario of future harm to the patentee, "it would not be harm caused by the infringer, and it generally offends notions of equity to punish one for the misconduct of others"); *Nesbitt v. Holmes Cnty.*

14

*Comm'rs*, 2007 WL 141140, at *2 (N.D. Fla. Jan. 17, 2007) (finding no threat of irreparable injury when the action complained of was performed by a non-party); *Spencer v. Stapler,* 2006 WL 2052704, at *9 (D. Ariz. July 21, 2006) (denying plaintiff's motion for injunctive relief because it concerns events that are unrelated to the subject of his complaint and concerns conduct of persons other than the named defendants).  That Nelson's declaration begins with the premise that he is jointly analyzing the factors for injunctive relief against J&J and Tandus (Nelson Decl. ¶¶ 1, 2, 6, 7; Nelson Tr. 11:3-25) – two distinct parties involved in different cases offering different allegedly infringing products – further demonstrates that his testimony is not sufficiently reliable to be of assistance to the Court in this matter.  Fed. R. Evid. 702.

Moreover, in a number of instances the "economic considerations" put forth by Nelson have absolutely no relation to Tandus' alleged infringement.   For example, Nelson did not even attempt to show that Tandus' accused products are causing price erosion of Interface's TacTiles – because they are not.  Nelson does not offer even <u>one instance</u> of Interface having to lower the price of its TacTiles product as a result of competition with Tandus' TandusTape™.  Nelson Decl. ¶¶ 64-74.  Nelson acknowledges that the <u>only</u> instance of arguable price erosion was a result of competition with J&J.   Nelson Decl. ¶¶ 73-74; Nelson Tr. 12:2-18.

15

Further, TandusTape™ (and TandusTape+™) is priced higher than Interface's TacTiles product (Declaration of Leonard Ferro, Doc. No. 26-5, ¶ 7), a fact which Nelson is aware of (Nelson Decl. ¶ 35) but chooses to ignore.

## IV.   CONCLUSION

For the reasons set forth herein, Tandus respectfully requests that the Court grant its motion by executing the accompanying Proposed Order.

## LOCAL RULE 7.1(D) CERTIFICATION

As required by Northern District of Georgia Local Rule 7.1(D), I hereby certify that this document has been prepared in Times New Roman 14-point font, one of the font and point selections approved by this Court in Local Rule 5.1(C).

Respectfully submitted, this 7th day of June, 2013.

WOMBLE CARLYLE SANDRIDGE & RICE, LLP

/s/ Preston H. Heard
Preston H. Heard
Georgia Bar No. 476319
271 17th Street, Suite 2400
Atlanta, Georgia 30363
Telephone:  (404) 888-7366

Barry J. Herman (*admitted Pro Hac Vice*)
250 West Pratt Street, Suite 1300
Baltimore, MD  21201
Telephone:  (410) 545-5830

Kristen H. Cramer
Georgia Bar No. 219273
222 Delaware Avenue, Suite 1501
Wilmington, DE  19801
Telephone: (302) 252-4348

*Counsel for Defendants Tandus Flooring, Inc. and Tandus Flooring US, LLC*

WCSR  7783788

17