IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| INTERFACE, INC.; INTERFACE AMERICAS, INC.; INTERFACEFLOR LLC; and FLOR, INC., | ) ) ) ) | |
| Plaintiffs, | ) ) | CIVIL ACTION FILE |
| v. | ) ) | NO. 4:13-cv-00046-WSD |
| TANDUS FLOORING, INC. and TANDUS FLOORING US, LLC, | ) ) ) | |
| Defendants. | ) ) | |

**PLAINTIFFS INTERFACE, INC., INTERFACE AMERICAS
INC., INTERFACEFLOR LLC, AND FLOR, INC.'S
RESPONSE TO DEFENDANTS TANDUS FLOORING, INC.
AND TANDUS FLOORING US, LLC'S MOTION TO
EXCLUDE OPINIONS AND
<u>TESTIMONY OF CLARKE B. NELSON</u>**

Defendants Tandus Flooring, Inc. and Tandus Flooring US, LLC's

(collectively "Tandus") Motion and Memorandum of Law to Exclude Opinions

and Testimony of Clarke B. Nelson, Dkt. 27 (collectively "Mot.") should be

denied.[1]  Mr. Nelson is an expert in, *inter alia*, the economic and other harms

---

[1] In the companion case also pending before this Court, *Interface, Inc., et al v. J&J
Indus., Inc*., No. 4:13-cv-00047-WSD (N.D. Ga.), Mr. Nelson submitted the same
declaration in support of Interface's Motion for Preliminary Injunction.  *See* Ex. A

caused by patent infringement, and he has testified on these matters in courts around the country. In essence, his testimony here addresses two fundamental points. First, based upon his training and experience, Mr. Nelson identifies the types of irreparable harm that are typical and likely in cases of patent infringement by direct competitors. Second, based upon his evaluation of the market for the invention and the facts relating to the ongoing infringement, Mr. Nelson describes the facts that indicate the likely harms are occurring. Mr. Nelson is not, however, an expert on patent law, and he does not opine on whether these facts and circumstances meet any legal thresholds.

In sum, Mr. Nelson provides information on the types of economic considerations that he understands, on the basis of his experience and specialized knowledge, to be relevant to the Court's determination of likelihood of irreparable harm, under the facts and circumstances of this case. For these reasons and those further discussed below, Tandus' Motion should be denied.

## I. INTRODUCTION

On February 26, 2013, Interface filed the instant action asserting that Tandus infringes U.S. Patent No. 8,381,473 ("the '473 Patent"), and seeking injunctive

---

to Dkt. 4. J&J, however, has not moved to exclude the opinions and testimony of Mr. Nelson.

relief and damages. *See* Dkt. 1. Shortly thereafter, Interface filed its Motion for Preliminary Injunction. *See* Dkt. 8. In support of that Motion, Interface provided a declaration from Mr. Nelson, analyzing the facts he then knew, and discussing how those facts relate to economic considerations that courts generally take into account in evaluating the "likelihood of irreparable harm" and "balance of the hardships" prongs of the preliminary injunction analysis. *See* Decl. of Clarke B. Nelson in Supp. Interface, Inc.'s Mot. Prelim. Inj., attached as Ex. A to Dkt. 8 (hereinafter "Nelson Decl.").

Mr. Nelson is an expert who has provided declarations, expert reports, and testimony in district court relating to patent infringement matters in which injunctive relief and damages are at issue. He has considerable experience in addressing issues that arise in connection with the "likelihood of irreparable harm" and "balance of harms" components of preliminary injunction analysis, such as information about sales, business opportunities, market positioning, market share, reputation, and good will. *See* Nelson Decl. ¶¶4, 5.[2] In his declaration in this matter, Mr. Nelson recounted the relevant evidence he reviewed that was available

---

[2] In contrast, Tandus' purported expert, Andrew Carter, has never provided any declaration, expert report, or testimony, before this case, with respect to a preliminary injunction. Dep. of Andrew Carter at 55:7–14 (June 21, 2013), attached at Lee Decl., Ex. 2 ("Carter Dep.").

to him at that time,[3] and provided his analysis tying that evidence to various relevant economic considerations.  *See generally* Nelson Decl. ¶¶42-108.  Mr. Nelson did not, as Tandus would have it, rely solely on anecdotal evidence from Interface employees.  He also relied on financial records relating to Interface's TacTiles® connector product (Interface's commercial embodiment of the '473 Patent), other publicly reported records of Interface, competitors' publicly available records and advertising, numerous industry trade publications, and third party documents in Interface's possession, such as Requests for Proposals seeking "glueless installation."  *See generally* Nelson Decl. at Schedule 2 ("Documents/Information Relied Upon").

Based on his analysis of these documents and information, and his specialized expertise in addressing damages and other economic issues relating to irreparable harm, Mr. Nelson opined that it would be difficult, under the facts and circumstances of this case, to quantify the full extent of harm to Interface caused by Tandus' allegedly infringing activities.  Mr. Nelson explained that he believed this would be difficult because of numerous circumstances that supported finding a likelihood of irreparable harm, but were difficult to reduce to dollar amounts—

---

[3] This did not include confidential materials and information from Tandus, which had not yet been produced.

including facts relating to Interface's "first mover" advantage in the market for glueless installation with connectors; Interface's reputation for innovation and exclusivity, including specifically with respect to installation with connectors; loss of customer goodwill; unrecoverable price erosion; subsequent sales opportunities to first-time customers; and harm to Interface's ability to rely on TacTiles® connectors as a unique sales differentiator. *See* Nelson Decl. ¶¶102-108. Mr. Nelson explained his analysis at considerable length during his protracted deposition, which lasted from 9:39 a.m. until 7:42 p.m., and extensively covered his methodology and the facts and data upon which he relied. *See, generally* Dep. of Clarke B. Nelson at 6:13-16, 338:14-15 (May 31, 2013), attached at Lee Decl., Ex. 1 ("Nelson Dep.").

Tandus moves to exclude Mr. Nelson, ostensibly on the grounds that (a) he is purportedly attempting to usurp the role of the Court, and (b) his methodology and supporting facts and data are unreliable. *See* Mot. at 5-17. As shown below, Mr. Nelson expressly avoids usurping the Court's role and his methodology is entirely conventional for an economic expert. In fact, Tandus' motion is based on nothing more than Tandus' disagreement with Mr. Nelson's identification and analysis of relevant economic considerations. This is no basis for excluding his

testimony.  If relevant at all, it goes only to the weight that the Court should place on his testimony.

## II.    ARGUMENT AND CITATION OF AUTHORITY

Expert testimony is admissible under Federal Rule of Evidence 702 where the expert's knowledge, skills, and experience will "help the trier of fact to understand the evidence …"  provided his observations are "based on sufficient facts or data; [and] the product of reliable principles and methods" and he has "reliably applied the principles and methods to the facts of the case."  Fed. R. Evid. 702.  In determining the admissibility of expert testimony under Rule 702 of the Federal Rules of Evidence, the district court must engage in a "rigorous three-part inquiry," considering whether

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*Rosenfeld v. Oceania Cruises, Inc.*, 654 F.3d 1190, 1193 (11th Cir. 2011) (citation omitted).  Mr. Nelson easily meets this rigorous test.  He is well qualified to provide the analysis set out in his declaration; his methodology is sound and reliable; and his testimony will be helpful to the Court's evaluation of the

irreparable harm and balance of hardship prongs of its preliminary injunction analysis.

## A.    Mr. Nelson Does Not Trespass on the Role of the Court.

Tandus misconstrues Mr. Nelson's role in this proceeding.  Mr. Nelson made clear that he is ***not*** attempting to "apply[] the indicia of irreparable harm to the facts [which] is solely within the judges' purview."  Mot. at 6 (citation omitted); *see also* Nelson Dep. 14:3-11 ("[M]y role is not necessarily to give an opinion of irreparable harm in this matter.  My understanding is that that's a legal conclusion [] ultimately for the Court to make.").  Instead, Mr. Nelson is providing his observations and analysis about the presence of certain economic considerations, under the facts and circumstances of this case, that are relevant to "help the trier of fact understand the evidence or to determine a fact in issue[,]" as expressly permitted under Federal Rule of Evidence 702.[4]

As he explained at his deposition, Mr. Nelson did exactly what an economic expert is supposed to do.  That is, he applied his specialized expertise to identify

---

[4] Oddly, given that one of the bases Tandus asserts in support of its motion to exclude is that Mr. Nelson inappropriately intrudes on the role of the Court in determining irreparable harm, Tandus' own motion makes this point clear: "Nelson went to great lengths to make clear that he was offering no opinion with respect to each of the four preliminary injunction factors, including irreparable harm[.]" Mot. at 5-6.

"economic and quantitative and qualitative considerations" that he understands—
on the basis of his experience in analyzing issues such as lost sales, lost business
opportunities, losses in market share, and harm to reputation and good will—to be
relevant to the Court's ultimate legal determination.  Mr. Nelson "look[ed] at a
number of economic considerations and factors that may be relevant and assist the
trier of fact in making its determination [that there is irreparable harm sufficient to
support the grant of a preliminary injunction.]"  Nelson Dep. 14:7-11; *see also id.*
at 14:15-15:5 (Mr. Nelson discussed a number of "economic considerations or
indicia that are perhaps commonly considered that I'm aware of that Courts have
often looked at" in similar preliminary injunction matters).  Contrary to Tandus'
arguments for exclusion, however, Mr. Nelson has not attempted to provide an
opinion about the ultimate legal conclusions reserved for the Court, as to whether
there is a likelihood of irreparable harm, or whether a preliminary injunction
should issue.

###    B.    Mr. Nelson's Analysis is Far More than Simple Regurgitation of Interface's Fact Declarations.

Tandus next argues that Mr. Nelson's opinions should be excluded because
"[t]he bulk of Nelson's declaration simply recounts and summarizes testimony by
Interface employees and publicly available sources concerning Interface's and
Tandus' businesses."  Mot. at 7.  Mr. Nelson's declaration, however, does far more

than simply "regurgitating" statements made by Interface witnesses, and provides more than "simple inferences" on the basis of Interface testimony.  Mot. at 7, 8.

To the extent that Tandus takes issue with Mr. Nelson's reliance on "publicly available" information, the criticism is misguided, given that, at the time of Mr. Nelson's initial declaration, this was the only available information about Tandus because no expedited discovery had yet been provided by Tandus. *Compare* Nelson Decl. *with* Order Granting Mot. Expedited Disc. at 2, Dkt. 14 (illustrating the date of execution of Mr. Nelson's Declaration as March 8, 2013 and the date for production of documents as May 10, 2013).  Furthermore, Tandus' glib characterization of the "bulk" of Mr. Nelson's declaration ignores that his "recounting and summarizing" was provided to disclose the facts and data on which he based his analysis of relevant economic considerations, as required by the Federal Rules.  Fed. R. Civ. P. 26(a)(2).  Tandus also ignores that the facts and data on which Mr. Nelson based his observations and analysis included not only fact declarations from Interface witnesses, but also publicly reported data about Interface, its competitors and the floor covering industry as a whole, third-party

documents in Interface's possession, publicly available competitor information, and industry trade publications.[5]

Tandus' citations to portions of Mr. Nelson's declaration stating that "Interface believes" and characterizing his declaration as "comprised of direct quotes from the declarations of Interface employees" are debatably accurate and entirely irrelevant. To the extent that Mr. Nelson provides information about Interface's beliefs and statements, that information is set out, as the Federal Rules require, to disclose background and support for his observations and analysis concerning the economic considerations relevant to the Court's decision-making about likelihood of irreparable harm and balance of the hardships. *See* Nelson Decl. ¶¶45-102. Though (as Tandus apparently recognizes) the facts of this case do make abundantly clear that economic considerations supporting a likelihood of irreparable harm *are* present, Mr. Nelson does not merely draw "simple inferences" from those facts. Mot. at 8. Instead, he uses those facts to identify economic considerations that he believes, on the basis of his knowledge and experience, to be relevant to the Court's ultimate legal conclusions.

---

[5] Tandus fails to take into account the fact that at the time Mr. Nelson submitted his initial declaration, there was no discovery taken in the case, thus Mr. Nelson did not have access to Tandus' financial or confidential information relating to the accused products, or access to testimony from its employees or employees of other competitors.

Finally, the "examples" Tandus cites do not support its argument for exclusion. Tandus asserts that Mr. Nelson's observations about noninfringing commercially acceptable alternatives to glueless installation are unreliable because he allegedly ignored contrary testimony and documents. Mr. Nelson, however, relied on testimony in the record at the time he submitted his declaration, which included testimony from Interface people of ordinary skill in the art, as well as from a third-party installer, about whether there were "non-infringing commercially acceptable alternatives that provide a glueless installation consistent with that of the TacTiles connectors." Mot. at 7 (emphasis added). He did not, as Tandus asserts, "ignore[] the testimony from Bradford that undercuts [his] conclusion." Mot. at 7-8. First, it is impossible that Mr. Nelson could have "ignored" deposition testimony of John Bradford that was not given until over 2 months *after* he signed his declaration. Second, Mr. Nelson did indeed consider and rely on the testimony provided in Mr. Bradford's Declaration, in which Mr. Bradford stated that certain purported "alternatives" were not "true alternatives" to Interface's TacTiles® connectors product. *See* Bradford Decl. ¶21, attached at Tab 1 to Nelson Decl. ("However, these are not true alternatives to TacTiles® connectors.").

Further, the cursory statements in magazine articles Tandus asserts Mr. Nelson also "ignored," *see* Mot. at 8, do not, as Tandus contends, undercut the admissibility of Mr. Nelson's testimony. Mr. Nelson appropriately and accurately stated that he does not have the technical expertise to opine on specific aspects of various noninfringing "glueless alternatives." He accordingly placed more weight on testimony from Mr. Bradford, who has the requisite technical expertise, than on isolated statements in magazine articles. Tandus is, of course, free to disagree and to argue that the magazine articles are a more reliable source than testimony from Mr. Bradford, but Mr. Nelson's conclusion to the contrary is no basis for excluding his testimony.

Tandus' attempt to characterize Mr. Nelson's declaration as nothing more than rote recitation of favorable facts and Interface witness testimony is inconsistent with Mr. Nelson's Declaration and testimony, as explained above. Moreover, Tandus' contentions appear to boil down to nothing more than Tandus' disagreement with Mr. Nelson's assessment of facts and circumstances relevant to the Court's analysis of likelihood of irreparable harm. Such arguments, however, go to the weight and probative value of Mr. Nelson's testimony, not its admissibility. This Court is well-qualified to determine what weight it deems appropriate to accord Mr. Nelson's observations about relevant economic

considerations. Tandus' disagreement with his observations, and its consequent contention that they should not weigh in the Court's evaluation, do not support excluding his testimony.

### C. Mr. Nelson's Testimony Is Supported By Reliable Methodology.

Tandus contends that Mr. Nelson's methodology is flawed on the dubious grounds that (a) he cites to testimony from Interface employees; (b) he did not calculate damages; and (c) he purportedly was unfamiliar with the "methods used to form" the Interface employee testimony that he considered. None of these arguments supports excluding Mr. Nelson's testimony.

#### 1) *Mr. Nelson Appropriately Considered and Tested the Data, Including Interface Testimony, That He Considered.*

Under Federal Rule of Evidence 703, "[a]n expert may base an opinion on facts or data in the case that the expert has been made aware of *or* personally observed." (emphasis added). "[W]here the expert's testimony has a reasonable factual basis, a court should not exclude it. Rather, it is for opposing counsel to inquire into the expert's factual basis." *See Kilgore v. Reckitt Beckinser, Inc.*, No. 3:10-cv-196-TCB, --- F. Supp. 3d ---, 2013 WL 204691, at *3 (N.D. Ga. Jan. 18, 2013) (quoting *United States v. 0.161 Acres of Land*, 837 F.2d 1036, 1040 (11th Cir. 1988)). Mr. Nelson's methodology is appropriate because he has relied on information of which he has been made personally aware, through research,

investigation, and direct observation that has provided a reasonable factual basis for his testimony.

As discussed above, Mr. Nelson relied not only on the fact declarations of Interface employees, but also on numerous other sources, including publicly available documents from Interface and its competitors, industry trade publications, feedback from dealers and installers, Requests for Proposals from outside third parties, interviews, and other materials. *See, e.g.,* Nelson Decl. ¶¶15, 18-22, 27-30, 35-36, 41, 65, 75, 79, 86, 98; *see also* Schedule 2 to Nelson Decl. Mr. Nelson synthesized and evaluated all of this information to identify and discuss the economic considerations relevant to the Court's analysis of likelihood of irreparable harm and the balance of the hardships under the facts and circumstances of this case. *See* Nelson Decl. ¶¶42-108. There is nothing improper, nor even unconventional, about his methods.

Tandus appears to argue it was improper for Mr. Nelson to rely on statements from Interface employees, because they are ostensibly "biased" (Tandus apparently assumes distorting bias, simply because those individuals work for Interface). In any event, Tandus' argument relates to the weight of the information on which Mr. Nelson relied—and ultimately, to the weight that should be accorded

to his testimony—not to the admissibility of either the Interface declarations or Mr. Nelson's testimony.

It is telling that after contending that Mr. Nelson's testimony ought to be excluded because he relied on Interface employee interviews and declarations, Tandus proffered its own expert who attempts to rebut Mr. Nelson's declaration on the basis of conversations with, and declarations from, *Tandus* employees. *See, e.g.*, Carter Decl. ¶8, attached as Ex. 1 to Dkt. 26; Dep. of Andrew Carter at 14:13-23, 15:6-19 (June 21, 2013), attached at Lee Decl., Ex. 2 ("Carter Dep.").[6] Neither Tandus nor its expert has made any effort to reconcile this inconsistency (after all, if Interface employees are biased because they work for Interface, presumably Tandus employees are biased because they work for Tandus). Neither Tandus nor its expert has made any effort to explain why Mr. Nelson's testimony ought to be excluded as unreliable because he relied on Interface employees, while it apparently is acceptable for Tandus' expert to rely on Tandus employees.

Here again, the "examples" with which Tandus attempts to prop up its argument do not support excluding Mr. Nelson's testimony. Tandus first cites to

---

[6] Tandus' "expert," who submitted his declaration after production of documents during expedited discovery, had the luxury of a more fully-developed record for the preparation of his declaration, including documents produced by Tandus, declarations from Tandus employees, and depositions of Interface employees.

statements made by Mr. Gerson, Mot. at 10, as to which Mr. Nelson has explicitly testified that *he did* test and evaluate. Nelson Dep. 36:9-11, 56:15-57:7. Mr. Nelson further testified that Mr. Gerson's statements were confirmed, not only by the fact of Mr. Gerson's position and responsibilities within Interface, but also by Mr. Nelson's conversations with other Interface employees, *and* documents Mr. Nelson reviewed, including publicly available industry publications and competitors' advertising. *Id.* at 56:15-57:7. Likewise, and contrary to Tandus' arguments, Mot. at 11-12, Mr. Nelson did in fact test Interface witnesses' testimony that the "features claimed in the '473 patent are a 'key sales differentiator' allowing Interface to 'obtain new business.'" *See* Nelson Dep. 42:4-10; 46:3-47:9.

Mr. Nelson did not simply accept Interface employees' testimony and declarations at face value. Rather, he evaluated the additional information provided by Interface employees in light of all of the materials and data available to him. Indeed, as he pointed out several times during his deposition, he did, in fact, "test" the representations of Interface employees. *See, e.g.*, Nelson Dep. 36:9-11, 42:4-10; 46:3-47:9, 56:15-57:7. Tandus' disagreement with Mr. Nelson's conclusions about the credibility of Interface witnesses' testimony again, goes to the weight of his testimony and does not support excluding it.

2) **_Calculation of Damages is Not Relevant to the Reliability of Mr. Nelson's Methods or Testimony Relating to Economic Considerations Relating to Irreparable Harm._**

Tandus' additional argument regarding what it characterizes as Mr. Nelson's "failure" to attempt to calculate damages is another red herring.[7] First, Mr. Nelson stated in his declaration that "this matter presents challenges to quantifying the **_full measure_** of compensatory damages to a reasonable probability[, and] the full measure of compensation for those lost sales, profits, market share, and opportunities **_is difficult to quantify_**." Nelson Decl. ¶¶102, 103 (emphasis added). Mr. Nelson's observation that the full measure of damages is difficult to quantify identifies another factor relevant to the Court's determination about equitable relief. That Mr. Nelson did not attempt to perform the calculation that he identified as a "challenge" and "difficult" in terms of quantifying a "full measure" of compensation, is beside the point. Mr. Nelson's statement and the fact that he did not attempt that calculation do not support excluding his opinion. Neither do they support, as Tandus appears to believe, the proposition that injunctive relief is inappropriate. The fact that past sales may be "calculable" does not demonstrate an absence of irreparable harm. If that were the case, preliminary injunctions

---

[7] As stated above, due to the nature and timing of the Motion for Preliminary Injunction, neither Interface nor Mr. Nelson had the sales figures for the accused products until well after Mr. Nelson provided his initial declaration.

would be unnecessary. *See Atlas Powder Co. v. Ireco Chemicals*, 773 F.2d 1230, 1233 (Fed. Cir. 1985) ("If monetary relief were the sole relief afforded by the patent statute, then injunctions would be unnecessary and infringers could become compulsory licensees for as long as the litigation lasts."). It is the incalculable *future* harm, such as loss of market share and goodwill, that injunctive relief is designed to address.

3) ***The "Methods Used to Form" Interface Employee Declarations Considered by Mr. Nelson Do Not Demonstrate that His Methodology Is Unreliable.***

Finally, Tandus attempts to challenge the reliability of Mr. Nelson's methodology on the convoluted basis that he was purportedly not familiar with the "methods used to form the[] opinions" of the Interface employees who provided testimony on which he relied. This makes no sense. The Interface employees provided declarations on the basis of their firsthand knowledge and experience with respect to sales, offers for sale, and uses of carpet tile installations. Mr. Nelson was entitled to rely on such declarations based on employees' factual knowledge, especially insofar as he tested those statements and ensured that they were supported by and consistent with other information available to him. The cases cited by Tandus to support its strained argument that Mr. Nelson's reliance on factual declarations from Interface employees was somehow improper are

inapposite, in that they concern experts' reliance on other alleged experts' unfounded projections that could not be admitted into the record. *See* Mot. at 13. Mr. Nelson relies on factual declarations and a panoply of other information, all of which is a matter of record and all of which he synthesized and considered.

4) ***Tandus' Meandering Recitation of Purported Unreliability Does Not Support Excluding Mr. Nelson's Testimony.***

Tandus' litany of purported reasons why Mr. Nelson's methodology was unreliable appears again to be no more than thinly cloaked assertions that Tandus disagrees with his testimony. Such argument, however, does not warrant excluding a witness, but instead goes to the weight of the witness' testimony. *See Rosenfeld v. Oceania Cruises, Inc.,* 654 F.3d 1190, 1193 (11th Cir. 2011) ("Indeed, in most cases, objections to the inadequacies of a study are more appropriately considered an objection going to the weight of the evidence rather than its admissibility.") (citation omitted). *Cf. Kilgore*, 2013 WL 204691, at *4 ("The requirement that expert testimony be based on sufficient facts or data . . . is not intended to authorize a trial court to exclude an expert's testimony on the ground that the Court believes one version of the facts and not the other.") (citations omitted).

None of Tandus' arguments about the propriety of Mr. Nelson's methodology, or the sufficiency of the underlying facts and data on which Mr. Nelson relied, provide a basis for excluding Mr. Nelson's testimony. At best, Tandus' arguments in seeking to exclude Mr. Nelson's analysis go simply to the weight this Court should afford his testimony. The fact that Tandus disagrees with Mr. Nelson's analysis is no basis for excluding it.

### D. Mr. Nelson Did Not Inappropriately Rely on Acts of Other Parties.

Throughout the first 13 pages of its Motion, Tandus argues that Mr. Nelson's testimony should be excluded because he did not put enough emphasis on competitors in the carpet tile market for "glueless installation." *See* Mot. at 6, 8, 10. On pages 14-17, however, Tandus does an about-face and criticizes Mr. Nelson for reviewing "economic considerations" relating to a competitor selling and offering for sale infringing products for glueless installation, competing in the exact market in which Tandus and Interface compete, and as to whom Interface also seeks a preliminary injunction. *See Interface, Inc. v. J&J Indus., Inc*., No. 4:13-cv-00047-WSD (N.D. Ga.).

Mr. Nelson's review and analysis of information relating to J&J Industries, Inc. ("J&J") fleshes out his overview of various economic considerations at play when infringing products are introduced to the marketplace, and sheds light

specifically on how Interface is affected under such circumstances.  Mr. Nelson is not using such evidence to "punish [Tandus] for the misconduct of [J&J,]" but rather, to assess facts relating to the market effects of J&J's direct competition with Interface, by selling and offering for sale carpet tile installations created with connectors.  In other words, Mr. Nelson uses information about J&J to perform exactly the type of analysis that Tandus earlier criticized Mr. Nelson for allegedly failing to perform.  Mr. Nelson's discussion of facts and analysis relating to another competitor with an infringing product is appropriate and relevant to the economic considerations discussed in his declaration.  His discussion of facts relating to such market data is no basis for excluding his testimony.

## III.  CONCLUSION

For the reasons set forth above, this Court should deny Tandus' Motion to Exclude the opinions and testimony of Clarke B. Nelson.

Respectfully submitted, this 28th day of June, 2013.

/s/ Matthew M. Lubozynski
William H. Boice
Georgia Bar No. 065725
Candice Decaire
Georgia Bar No. 209815
Matthew M. Lubozynski
Georgia Bar No. 140968
Joshua H. Lee
Georgia Bar No. 489842

OF COUNSEL:

Kevin C. Gallagher
Georgia Bar No. 282855
INTERFACE, INC.
Suite 2000
2859 Paces Ferry Rd.
Atlanta, Georgia  30339
(770) 437-6867

KILPATRICK    TOWNSEND    &
STOCKTON LLP
Suite 2800
1100 Peachtree Street
Atlanta, Georgia  30309-4530
Phone: (404) 815-6500
Fax: (404) 815-6555

ATTORNEYS FOR PLAINTIFFS

## <u>LOCAL RULE 7.1(D) CERTIFICATION</u>

As required by Northern District of Georgia Local Rule 7.1(D), I hereby certify that his brief has been prepared with one of the font and point selections approved by the Court in Civil L.R. 5.1(C) (Times New Roman, 14).


This 28th day of June, 2013.

<table>
<tr><td></td><td>/s/ Matthew M. Lubozynski</td></tr>
<tr><td></td><td>William H. Boice</td></tr>
<tr><td></td><td>Georgia Bar No. 065725</td></tr>
<tr><td></td><td>Candice Decaire</td></tr>
<tr><td></td><td>Georgia Bar No. 209815</td></tr>
<tr><td></td><td>Matthew M. Lubozynski</td></tr>
<tr><td>OF COUNSEL:</td><td>Georgia Bar No. 140968</td></tr>
<tr><td></td><td>Joshua H. Lee</td></tr>
<tr><td>Kevin C. Gallagher</td><td>Georgia Bar No. 489842</td></tr>
<tr><td>Georgia Bar No. 282855</td><td>KILPATRICK TOWNSEND &amp;</td></tr>
<tr><td>INTERFACE, INC.</td><td>STOCKTON LLP</td></tr>
<tr><td>Suite 2000</td><td>Suite 2800</td></tr>
<tr><td>2859 Paces Ferry Rd.</td><td>1100 Peachtree Street</td></tr>
<tr><td>Atlanta, Georgia 30339</td><td>Atlanta, Georgia 30309-4530</td></tr>
<tr><td>(770) 437-6867</td><td>Phone: (404) 815-6500</td></tr>
<tr><td></td><td>Fax: (404) 815-6555</td></tr>
<tr><td></td><td>ATTORNEYS FOR PLAINTIFFS</td></tr>
</table>

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was filed electronically with the Clerk of Court using the CM/ECF system, which will automatically send e-mail notification of such filing to counsel of record.

This 28th day of June, 2013.

/s/ Matthew M. Lubozynski
Matthew M. Lubozynski
Georgia Bar No. 140968

ATTORNEY FOR PLAINTIFFS