# Exhibit 1

# Declaration of Joshua H. Lee, Esq.

Page 1

```
 1              IN THE UNITED STATES DISTRICT COURT
             FOR THE NORTHERN DISTRICT OF GEORGIA
 2                        ROME DIVISION
 3   INTERFACE, INC.; INTERFACE      )
     AMERICAS, INC.; INTERFACEFLOR   )
 4   LLC; and FLOR, INC.             )
                                     )
 5       Plaintiffs and Counter      )CIVIL ACTION FILE
         Defendants,                 )
 6                                   )NO. 4:13-CV-00046-WSD
      vs.                            )
 7                                   )
     TANDUS FLOORING, INC. and       )
 8   TANDUS FLOORING US, LLC,        )
                                     )
 9       Defendants and Counter      )
         Plaintiffs.                 )
10   _____)
                                     )
11   INTERFACE, INC.; INTERFACE      )
     AMERICAS, INC.; INTERFACEFLOR   )
12   LLC; and FLOR, INC.             )
                                     )
13       Plaintiff and               )CIVIL ACTION FILE
         Counterclaim-Defendant,     )
14                                   )NO. 4:13-CV-00047-WSD
      vs.                            )
15                                   )
     J&J INDUSTRIES, INC,            )
16                                   )
         Defendant and               )
17       Counterclaimant.            )
18                      - - -
19    HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY
20
         VIDEOTAPED DEPOSITION OF CLARKE B. NELSON
21              MAY 31, 2013, 9:39 A.M.
22           KILPATRICK TOWNSEND & STOCKTON, LLP
                  1100 PEACHTREE STREET
23                  ATLANTA, GEORGIA
24   REPORTED BY:
     SUZANNE BEASLEY, RPR
25   CCR-B-1184                        JOB NO: 61748
```

Highly Confidential - Outside Attorneys' Eyes Only

Page 5

1  APPEARANCES OF COUNSEL:
2
       On behalf of the Plaintiffs:
3            CANDICE DECAIRE, Esq.
             Kilpatrick Townsend & Stockton
4            1100 Peachtree Street
             Atlanta, Georgia 30309
5
6
7
       On behalf of the Defendants and Counterclaim
8      Plaintiffs Tandus Flooring, Inc. and Tandus
       Flooring US, LLC:
9            BARRY HERMAN, Esq.
             Womble Carlyle Sandridge & Rice
10           250 West Pratt Street
             Baltimore, Maryland 21201
11
12
13
       On behalf of the Defendant and Counterclaimant
14     J&J Industries, Inc.:
             THOMAS LUNDIN, JR., Esq.
15           King & Spalding
             1180 Peachtree Street, N.E.
16           Atlanta, Georgia 30309
17
18
19  Also Present:  Kevin Gallagher, Esq.
20
    Videographer:  Derrick Jones
21
                        - - -
22
23
24
25

Highly Confidential - Outside Attorneys' Eyes Only

Page 6

1       CLARKE B. NELSON
2       THE VIDEOGRAPHER:  This is the start
3  of tape labeled number one in the videotape
4  deposition of Clarke Nelson in the matter
5  of Interface, Inc.; Interface Americas,
6  Inc.; InterfaceFLOR, LLC; and FLOR, Inc.
7  versus Tandus Flooring, Inc., Tandus
8  Flooring US, LLC, case number
9  4:13-CV-00046-WSD, and Interface, Inc.;
10 Interface Americas, Inc.; InterfaceFLOR,
11 LLC; and FLOR, Inc. versus J&J Industries,
12 Inc., case number 4:13-CV-00047-WSD.
13      The deposition is being held at
14 Kilpatrick Townsend & Stockton,
15 1100 Peachtree Street, Atlanta, Georgia, on
16 May 31st, 2013, at approximately 9:39 a.m.
17      My name is Derrick Jones.  I'm the
18 legal video specialist for TSG Reporting.
19 The court reporter is Suzanne Beasley in
20 association with TSG Reporting.
21      Will counsel please introduce
22 yourselves.
23      MS. DECAIRE:  Candice Decaire from
24 Kilpatrick Townsend & Stockton, LLC, on
25 behalf of the plaintiffs and the witness.

Page 7

1           CLARKE B. NELSON
2       MR. HERMAN:  Barry Herman from
3    Womble Carlyle on behalf of Tandus, the
4    Tandus defendants.
5       MR. LUNDIN:  Tom Lundin with
6    King & Spalding representing defendant
7    J&J Industries.
8       MS. DECAIRE:  And I will note that
9    with me with is Kevin Gallagher of
10    Interface, the plaintiff.
11       (The signature of the witness to the
12  deposition was reserved.)
13             CLARKE B. NELSON,
14  having been duly sworn, was examined and testified
15  as follows:
16                EXAMINATION
17  BY MR. HERMAN:
18      Q.   Good morning, Mr. Nelson.
19      A.   Good morning.
20           (Exhibits 37, 38, 39 and 40 were
21      marked for identification.)
22  BY MR. HERMAN:
23      Q.   I've placed in front of you what's been
24  marked as Defendant's Exhibits 37 through 40.
25  Defendant's 37 is the declaration that you submitted

Highly Confidential - Outside Attorneys' Eyes Only

1   CLARKE B. NELSON
2   end of the day, what's your opinion?
3       A.   Again, my role is not necessarily to give
4   an opinion of irreparable harm in this matter.  My
5   understanding is that that's a legal conclusion --
6       Q.   Okay.
7       A.   -- ultimately for the Court to make.  My
8   role and my scope of my assignment was to look at a
9   number of economic considerations and factors that
10  may be relevant and assist the trier of fact in
11  making its determination of that conclusion.
12      Q.   Well, if you're not giving an opinion,
13  then how is that going to help the trier of fact?
14          MS. DECAIRE:  Object to the form.
15          THE WITNESS:  There are a number of
16      economic considerations or indicia that are
17      perhaps commonly considered that I'm aware
18      of that Courts have often looked at in
19      similar types of matters in similar types
20      of issues, and therefore, I was asked to
21      analyze those factors and considerations,
22      those economic indicia, if you will, and
23      present those in the declaration.
24          I think that assists the trier Court
25      in understanding what those issues may be

Highly Confidential - Outside Attorneys' Eyes Only

Page 15

1       CLARKE B. NELSON
2       and understanding what considerations may
3       exist, both qualitative and quantitative,
4       it may take into consideration when it
5       makes its decision.
6  BY MR. HERMAN:
7       Q.   Other than the Miche Bag case that you
8  referred to earlier, have you ever submitted a
9  similar type declaration in connection with a
10 preliminary injunction motion?
11      A.   Yes.
12      Q.   What case was that?
13      A.   It's called ICON Health & Fitness versus
14 Johnson, maybe Health Tech North America.  There may
15 be some variations to that part of the Johnson name.
16      Q.   Can we call it the ICON case?
17      A.   Sure.
18      Q.   What's the status of that case?
19      A.   It's still pending.
20      Q.   Was there a Daubert motion filed against
21 you?
22      A.   Yes.
23      Q.   Did you read it?
24      A.   Yes.
25      Q.   In your words, what was the argument made

Highly Confidential - Outside Attorneys' Eyes Only

Page 36

1        CLARKE B. NELSON
2    A.   I do.
3    Q.   Do you believe that to be true?
4    A.   It's a statement by Mr. Gerson.  I
5  certainly accepted his representation of that to be
6  true.  I don't have a legal opinion as to whether or
7  not it's true or not, but I've accepted his
8  representation as a representative of Interface.
9    Q.   Did you test that statement?
10        MS. DECAIRE:  Object to the form.
11        THE WITNESS:  Yes, I believe so.
12 BY MR. HERMAN:
13   Q.   Do you know when Collins & Aikman's peel
14 and stick product came out?
15   A.   I don't recall.
16   Q.   If I told you it was in the late 1980s,
17 would that surprise you?
18   A.   Not necessarily.
19   Q.   Do you know when Milliken's TractionBack
20 product came out?
21   A.   I don't recall the date, no.
22   Q.   If I told you that was roughly the 2003
23 timeframe, would that surprise you?
24   A.   Say the date again.
25   Q.   2003.

Highly Confidential - Outside Attorneys' Eyes Only

Page 42

1  CLARKE B. NELSON
2  key sales differentiator, as a unique selling
3  proposition, if you will.
4          I looked at that from Interface's
5  perspective and then also looked at it from the
6  defendant's perspective as well with the information
7  that I had available to see if there was consistency
8  there in that type of installation and the apparent
9  importance of that to the parties, and found that to
10 be the case.
11     Q.   So you believe that Tandus believes that
12 the '473 patent is a key sales differentiator for
13 Interface?
14          MS. DECAIRE:  Object to the form.
15          THE WITNESS:  I would say I can't
16     opine on what Tandus itself believes, but I
17     can look at their -- or at its marketing
18     and promotion material, the public
19     information that's been available to me
20     thus far, and certainly expect to look at
21     additional discovery, that as I understand
22     it, is starting to trickle in in this
23     matter to further educate my understanding
24     of that issue.
25 ///

1                    CLARKE B. NELSON

2   BY MR. HERMAN:

3       Q.    Did you test either of those statements?

4       A.    Yes.

5       Q.    How?

6       A.    I had discussions with Mr. Hill and

7   Mr. -- do you pronounce it Sedlacek?

8       Q.    Yes.  I got corrected several times on the

9   record.  So, yes, I'm very familiar with how to

10  pronounce it now.

11      A.    I'm sorry to hear.

12      Q.    I was kidding, by the way.  For the

13  record, that was --

14      A.    Sorry.  What's the pending question?

15      Q.    I'll just ask again.  Did you test the

16  statements of Mr. Hill and Mr. Sedlacek --

17      A.    Yes.

18      Q.    -- that we just read paragraph in 76 of

19  your declaration?

20      A.    Yes, I did.

21      Q.    How did you do that?

22      A.    A combination of interviews and

23  discussions with both of those individuals;

24  interviews with other account -- or at least another

25  account executive; an examination of the

Page 47

1                CLARKE B. NELSON

2    documentation that's available to me; the marketing

3    and promotional material certainly in particular

4    comes to mind, to determine whether that was

5    consistent with those statements; an understanding of

6    Mr. Hill and Mr. Sedlacek's interactions with

7    customers and/or dealers, to understand again that

8    relationship of TacTiles and how they use TacTiles to

9    further their sales efforts.

10       Q.    Mr. Sedlacek's statement in particular is

11   a pretty incredible statement, isn't it, on its face?

12            MS. DECAIRE:  Object to the form.

13            THE WITNESS:  I don't know.

14   BY MR. HERMAN:

15       Q.    "In 23 years, TacTiles connectors are by

16   far the most powerful selling tool Interface has

17   had."  Do you think that's an incredible statement?

18            MS. DECAIRE:  Same objection.

19            THE WITNESS:  I mean, the statement

20       is what it is.  I don't have an opinion

21       that it's incredible or not.

22   BY MR. HERMAN:

23       Q.    Did you ask him to compare it to other

24   selling tools that Interface has had in the last

25   23 years?

Highly Confidential - Outside Attorneys' Eyes Only

Page 56

1      CLARKE B. NELSON

2           THE WITNESS:  Well, again, I haven't
3      spoken to Mr. Gerson, but my understanding
4      of his title is that he is the senior
5      director of customer experience.  And I'd
6      have to refresh my memory of his
7      declaration, but my recollection is that he
8      certainly is engaged in understanding the
9      marketplace, understanding the competitive
10     positioning of Interface with respect to
11     its competitors, and therefore, would
12     certainly have that perspective and ability
13     to make that statement.
14 BY MR. HERMAN:
15     Q.    But you didn't test that specific
16 statement with Mr. Gerson, correct?
17     A.    Incorrect.
18     Q.    You said you didn't speak to Mr. Gerson.
19     A.    That's correct.
20     Q.    So with respect to this statement that,
21 "Competitors believe that Interface's TacTiles
22 connectors are Interface's strongest selling point,"
23 how did you personally test that statement?
24     A.    Again, I looked at the documentation that
25 was made available to me to understand and confirm

Highly Confidential - Outside Attorneys' Eyes Only

Page 57

1      CLARKE B. NELSON
2  that there is consistent information with that kind
3  of a statement and found that to be the case, as well
4  as the discussions and declarations -- excuse me, the
5  discussions that I had and the declarations that I
6  read of other individuals in this matter that further
7  confirm or add to the veracity of that statement.
8       Q.   Wouldn't it be a fair reference from
9  looking at Exhibit 41 that actually the i2 modular
10 product line is one of Interface's most powerful
11 selling tools and TacTiles is just, quote, another
12 recent innovation?
13           MS. DECAIRE:  Object to the form.
14           THE WITNESS:  The document says what
15      it says.  I'll note that this is a -- an
16      RFP, or a request for proposal, for a
17      specific customer, and presumably the RFP
18      was prepared with that in mind.  Beyond
19      what the document states, I don't know that
20      I can comment further on your inference or
21      your suggestion.
22 BY MR. HERMAN:
23      Q.   Well, let's take a look at the -- a little
24 more detail in the document.  If you turn to the
25 third page of the document, which is a letter from

Highly Confidential - Outside Attorneys' Eyes Only

Page 338

1        CLARKE B. NELSON
2   about is reputation as an innovator?
3        A.   Sure.
4             MR. LUNDIN:  I think that's all I've
5        got.
6             THE VIDEOGRAPHER:  Going off.
7             MS. DECAIRE:  Not yet.  I don't have
8        any questions for you, but I do need to
9        designate the transcript highly
10       confidential, attorneys' eyes only.  We
11       will de-designate as quickly as we get the
12       transcript.  And I thank you for your time,
13       and we'll close the deposition.
14            THE VIDEOGRAPHER:  Off the record at
15       7:42 p.m.
16            (Deposition was concluded at 7:42 p.m.)
17
18
19
20
21
22
23
24
25